# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID VU, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | CIV-09-448-D |
| | ) | |
| ERIC K. SHINSEKI, as Secretary of the | ) | |
| U. S. Dept. of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

## **O R D E R**

Before the Court is Defendant's motion for partial summary judgment [Doc. No. 39]. Plaintiff timely responded to the motion, Defendant filed a reply, and Plaintiff filed a sur-reply.

I. Background:

In this action, Plaintiff David Vu, M. D. ("Dr. Vu") asserts claims based on Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e, *et seq.*, ("Title VII"), the Rehabilitation Act, 29 U. S. C. § 701 *et seq.*, and the Age Discrimination in Employment Act, 29 U. S. C. § 621 *et seq.* ("ADEA"); these claims are asserted against his former employer, the United States Department of Veterans Affairs.[1]

Dr. Vu was employed as a physician by the Veterans Administration Medical Hospital in Oklahoma City (the "VA Hospital") for more than 23 years. On or about June 30, 2007, he retired from his employment. Dr. Vu contends that he was constructively discharged from his employment; he also alleges that he was subjected to employment discrimination based on his race, national origin, and age in violation of Title VII and the ADEA, and that he was subjected to unlawful

---

[1]Because Dr. Vu was employed by a federal agency, the proper party defendant is the head of that agency. 42 U. S. C. § 2000e-16(c); *Brezovski v. United States Postal Service*, 905 F. 2d 334, 335 (10th Cir. 1990). Accordingly, Eric K. Shinseki, Secretary of Veterans Affairs, is properly named as the defendant.

discrimination under the Rehabilitation Act because his employer failed to accommodate his disability. In addition, Dr. Vu alleges his employer retaliated against him because he exercised rights under Title VII, the ADEA and/or the Rehabilitation Act.[2]

Defendant seeks judgment only on Dr. Vu's Seventh Claim for Relief, which asserts that Dr. Vu was constructively discharged from his employment because the working conditions became so intolerable that he felt he had no choice but to retire and terminate his employment. Defendant contends that, as a matter of law, it is entitled to judgment on that claim.

## II. Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, a defendant need not disprove the plaintiff's claim; it must only point to "a lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671

---

[2]In the Complaint, Dr. Vu also asserts common law tort claims of assault and battery and names Theodore Mickle, D.O., as the only defendant on those claims. However, by notice filed on July 16, 2009[Doc. No. 23], Plaintiff dismissed those claims, and dismissed Dr. Mickle as a defendant in this action.

(10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for him; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. *Id.*, at 671-72.

III. The record before the Court:

According to the record submitted by the parties,[3] it is not disputed that Dr. Vu is a Vietnamese-American who was employed by the VA Hospital for 23 years. The parties also agree that he is a military veteran, having served in the army of South Vietnam and in the United States armed forces. It is not disputed that, while serving as a Captain in the South Vietnamese army, Dr. Vu was captured by the North Vietnamese and held as a prisoner for three years. After his release, he practiced medicine with the United States Armed Forces prior to his employment at the VA Hospital. The parties also agree that Dr. Vu is board certified in internal medicine and, when he retired on June 30, 2007, he was 67 years old. At that time, he worked in the ambulatory care service unit ("ACS") at the VA Hospital. Prior to May 14, 2007, Dr. Vu had never been counseled regarding any performance problems at the VA Hospital.

From approximately June 2006 through June 2007, his immediate supervisor was Dr. Theodore Mickle, the ACS chief at the VA Hospital. On May 3, 2007, Dr. Vu submitted a letter to the VA Hospital administrators, discussing several complaints about Dr. Mickle. The letter, Defendant's Exhibit 1, was submitted by the "Providers of Ambulatory Care" at the VA Hospital; however, no individual names or signatures appeared on the letter. The letter detailed complaints

---

[3]Although Defendant seeks judgment only on the constructive discharge claim, the parties have submitted evidence involving all claims asserted because the Court must consider the totality of the circumstances in its evaluation of the constructive discharge claim. *See, e.g., Fisher v. Forestwood Co., Inc.*, 525 F. 3d 972, 980 (10th Cir. 2008) and discussion, *infra*.

3

about Dr. Mickle's management style, including unprofessional conduct, use of intimidating and derogatory language toward physicians and nurses, and denial of sick leave and Continuous Medical Education leave. It also alleged Dr. Mickle discriminated against the ACS physicians by hiring personal friends in positions for which ACS physicians were not given an opportunity to apply. In addition, the letter alleged he assigned to his friends a lighter work load than that demanded of other ACS physicians. Dr. Mickle was also accused of lacking the knowledge and clinical skills to supervise internists. The criticisms were characterized as acts of discrimination[4] resulting in a hostile work environment, and the letter requested a meeting with administrators to discuss these issues. The parties agree that Marc Smith ("Smith"), the union president, submitted a copy of this letter to David Wood ("Mr. Wood"), the VA Hospital Medical Director; Dr. Vu submitted it to Dr. Robert McCaffree, the Administrator of the VA Hospital.

It is not disputed that Dr. McCaffree and Mr. Wood did not formally respond to the May 3 letter. According to Dr. McCaffree, he did not respond because the letter was not signed, and there were no names identifying the authors of the letter.

On May 4, 2007, Dr. Vu and Dr. Mickle were involved in an incident involving a cell phone. Although the parties offer different versions of the facts concerning this incident, they agree that, after receiving a telephone call from the VA pharmacy with a question about a prescription ordered by Dr. Vu, Dr. Mickle carried his cell phone to Dr. Vu's office. Dr. Vu alleges Dr. Mickle shoved the cell phone to Dr. Vu's ear, striking him in the ear and causing injury which resulted in hearing

---

[4]According to Dr. Vu, the majority of ACU physicians were Asian or foreign-born. Defendant does not dispute this contention.

loss[5]; Dr. Mickle denies that he used any physical force and states he merely handed Dr. Vu the cell phone or held it near his ear. Dr. Mickle denies displaying anger or acting in a threatening manner, a contention disputed by Dr. Vu.

On May 11, 2007, Dr. Vu reported the May 4 cell phone incident in a "Report of Contact" submitted to Mr. Wood. *See* Government Exhibit 2. Dr. Vu stated that Dr. Mickle shoved the cell phone in his face, acting in a very rude and unprofessional manner; he added that many of his colleagues in the ACS had also been subjected to similar treatment by Dr. Mickle, resulting in "wide spread dissatisfaction and poor morale," and a "climate of fear and hostile environment." *Id.* Dr. Vu asked Mr. Wood to investigate. Dr. Vu also sent copies to others, including Dr. Mickle.

The cell phone incident was reported to the VA Hospital police, who conducted an investigation; documents reflecting interviews with Dr. Mickle, Dr. Vu and others are submitted as Defendant's Exhibit 3. According to the documents, no witnesses observed or heard the cell phone incident. Government Exhibit 3, p. 6. The parties agree no action was taken against Dr. Mickle.

On or about May 11, 2007, Dr. Mickle called Dr. Vu to a meeting, and counseled Dr. Vu about deficiencies in his method of documenting and "coding" patient records. At Dr. Vu's request, union president Marc Smith attended the meeting. Although the parties agree the meeting occurred, they dispute the exact comments made and the demeanor of Dr. Vu and Dr. Mickle. According to Dr. Vu, he was threatened with termination if he failed to improve his documentation; Dr. Mickle denies making any threat. Dr. Vu and Dr. Mickle accuse one another of being angry and hostile;

---

[5]Dr. Vu was subsequently examined by a VA audiologist; the parties disagree as to the interpretation of the results of the examination. Dr. Vu contends the report shows hearing loss in one ear; however, Defendant contends the report shows such loss is related to Dr. Vu's age and not to trauma.

5

each denies that he exhibited that demeanor.

It is not disputed that, after this meeting , Dr. Vu submitted a second "Report of Contact"; in that report, he alleged that Dr. Mickle was retaliating against him by criticizing his documentation and requiring him to code patient visits in a manner which Dr. Vu believed was incorrect. Dr. Vu also requested a meeting with Dr. McCaffree to discuss these allegations. *See* May 17, 2007 Report of Contact, Plaintiff's Exhibit 17. After receiving no response, Dr. Vu filed an EEO complaint on May 21, 2007. A copy is submitted as Plaintiff's Exhibit 21.

On May 31, 2007, Dr. Vu and 15 other ACS physicians submitted to Dr. McCaffree and Mr. Wood a signed statement adopting the May 3, 2007 letter concerning Dr. Mickle. A copy is submitted as Plaintiff's Exhibit 8. It is not disputed that only foreign-born physicians signed the letter. On June 4, 2007, Mr. Wood and Dr. McCaffree met with the 16 physicians; during the meeting, several physicians voiced personal complaints about Dr. Mickle and his operation of the department. Mr. Wood and Dr. McCaffree said they would look into their complaints. Dr. Vu did not receive any formal response.

On June 19, 2007, Dr. Mickle proposed that Dr. Vu be given a five-day suspension from employment. The stated reason was:

> On May 11, 2007, you sent a report of contact (ROC) to the medical center director accusing me of shoving a cell phone into your face on May 4, 2007. You stated in this ROC that I was creating a climate of fear and a hostile environment that is detrimental to the care of veterans at this facility. On May 14, 2007 you reported to the VA Police that I hit you on your ear with the cell phone creating hearing loss. These unfounded statements are slanderous and defamatory in nature and are an attempt to undermine my authority as chief of the service.

Government Exhibit 9. Dr. Mickle explained that Dr. Vu had 14 calendar days to respond orally and/or in writing to Dr. McCaffree, who would make the final decision regarding the proposed

suspension. The written proposal also advised Dr. Vu that he could choose a representative to act on his behalf and that he could review the evidence supporting Dr. Mickle's decision.

The parties agree that Dr. Mickle gave the June 19 letter to Dr. Vu in a meeting on June 25, 2007, but he considered taking action against Dr. Vu as early as May 30, 2007. Although the parties agree that Dr. Mickle discussed the proposed suspension with Dr. McCaffree before presenting it to Dr. Vu, they disagree as to the comments made during Dr. Mickle's June 25 meeting with Dr. Vu. According to Dr. Vu, Dr. Mickle said, or implied, that pursuing an appeal of the suspension would be futile because Dr. McCaffree agreed with the suspension. Dr. Mickle denies making that statement or otherwise indicating an appeal would be futile.

On June 25, Dr.Vu requested a six-week medical leave,[6] accompanied by a note from Dr. Leland Dennis; Dr. Mickle denied the request. The following day, Dr. Vu requested a two-week medical leave; the request was also accompanied by a note from Dr. Dennis, who indicated Dr. Vu was suffering from post-traumatic stress disorder ("PTSD"). Dr. Mickle also denied that request. Dr. Vu argues Dr. Mickle said he could not grant the medical leave unless the physician stated Dr. Vu was permanently and totally disabled; Dr. Mickle denies that statement.

According to Dr. Vu, he requested the medical leave because, following the cell phone incident, he had a recurrence of the PTSD he experienced after his release as a prisoner of war. Although he was not formally diagnosed as having PTSD, he contends his lengthy experience in treating veterans caused him to recognize the symptoms of the disorder. The record contains no evidence that he received treatment for PTSD prior to 2007. However, two nurses interviewed after the cell phone incident mentioned that Dr. Vu had PTSD. *See* Government Exhibit 3, p. 5.

---

[6]It is not disputed that Dr. Vu had approximately 300 days of unused medical leave at the time of his retirement.

7

Earlier, on May 16, 2007, Dr. Vu conferred with Dr. Richard Carothers, Chief of Psychology Service at the VA Hospital and Director of the Employee Assistance Program. A copy of Dr. Carothers' report regarding this conference is submitted under seal as Defendant's Exhibit 6. Dr. Vu told Dr. Carothers that, following the cell phone incident and the May 14 meeting with Dr. Mickle, he experienced bad memories of his confinement as a prisoner of war and the threats and physical injuries he suffered; he described loss of sleep and appetite. He stated he was afraid of Dr. Mickle, who is a large man. Dr. Vu also said the month of May is always difficult for him, as he was taken prisoner during that month. Dr. Carothers discussed the possibility of PTSD, and he scheduled a meeting the following week to further assess Dr. Vu.

Dr. Carothers supported Dr. Vu's request for medical leave from May 23 through May 30, and that leave was granted. On June 6, 2007, Dr. Carothers again met with Dr. Vu, and his notes state that Dr. Vu "reports he is doing much better." Defendant's sealed Exhibit 7. Dr. Vu also reported he was sleeping better without the use of medication, he was doing well at work, and he believed the "crisis is over"; he said the ACS physicians had met with the administrators regarding Dr. Mickle, and hoped some action would result. *Id.* Dr. Vu and Dr. Carothers agreed to terminate regular therapy, but Dr. Carothers told him to call if necessary.

Following his receipt of Dr. Mickle's proposed suspension on June 25, Dr. Vu again met with Dr. Carothers; he said his anxiety had returned as a result of Dr. Mickle's actions, and he wanted to request time off from work. Defendant's sealed Exhibit 10. Dr. Carothers said he would need to further assess Dr. Vu before making that recommendation. Although they scheduled an appointment for the following day, Dr. Vu cancelled the appointment, advising that he would seek treatment with a private psychiatrist. *Id.*

On June 25, 2007, Dr. Vu met with Dr. Leland W. Dennis, a psychiatrist. According to Dr. Dennis's notes, submitted as Defendant's sealed Exhibit 11, Dr. Vu explained his difficulty with Dr. Mickle and his belief that these incidents triggered a recurrence of PTSD. Dr. Dennis provided Dr. Vu with a statement recommending a period of leave not to exceed six weeks; this note was provided to Dr. Mickle on June 25. Defendant's sealed Exhibit 12. On June 26, 2010, Dr. Dennis provided a second note indicating Dr. Vu had PTSD with a "guarded" prognosis, and recommending a release from work for two weeks. Defendant's sealed Exhibit 13. As mentioned above, Dr. Vu was denied further medical leave.

It is undisputed that Dr. Vu did not appeal the five-day suspension imposed by Dr. Mickle on June 25, 2007. On June 27, 2007, Dr. Vu submitted his application for immediate retirement, to be effective June 30, 2007. Defendant's Exhibit 15. Dr. Vu maintains that, under all the attendant circumstances, the hostile and discriminatory conduct he was subjected to compelled him to end his employment through his involuntary retirement.

IV. Application:

In support of his constructive discharge claim, Dr. Vu contends that, prior to the May and June 2007 incidents involving Dr. Mickle, he did not plan to retire and had not considered doing so. He argues that Dr. Mickle's conduct and the alleged resulting hostile work environment, combined with the recurrence of his PTSD and the denial of his requested leave, caused him to conclude he had no choice but to retire because he believed he could not properly perform his job duties. He also argues he believed an appeal of his suspension would have been futile.

"A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to

9

resign." *Exum v. United States Olympic Committee*, 389 F. 3d 1130, 1135 (10th Cir. 2004) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129(2004) and *Sprague v. Thorn Americas, Inc.*, 129 F. 3d 1355, 1367 (10th Cir.1997)). "'The question is not whether working conditions at the facility were difficult or unpleasant.'" *Exum,* 389 F. 3d at 1135(quoting *Yearous v. Niobrara County Mem'l Hosp.*, 128 F. 3d 1351, 1357 (10th Cir.1997), *cert. denied,* 523 U.S. 1074 (1998)). "Working conditions must be so severe that the plaintiff simply had no choice but to quit." *Id.* (citing *Lighton v. Univ. of Utah*, 209 F. 3d 1213, 1222 (10th Cir.2000) and *Yearous,* 128 F. 3d at 1357).

The "standard for constructive discharge is 'substantial.'" *Johnson v. Weld County, Colo.*, 594 F. 3d 1202, 1217 n. 6 (10th Cir. 2010) (quoting *Fischer v. Forestwood Co.*, 525 F. 3d 972, 980 (10th Cir. 2008)). At summary judgment, the employee is required "to produce facts suggesting that the workplace was objectively intolerable such that a reasonable employee would have no choice but to quit." *Id.* (citing *Heno v. Sprint/United Mgmt. Co.*, 208 F. 3d 847, 858 (10th Cir. 2000)). The test is not merely subjective, but requires a plaintiff to present "facts sufficient to demonstrate under an objective test that a reasonable person would have viewed her working conditions as intolerable." *Apgar v. State of Wyoming*, 2000 WL 1059444 at *7 (10th Cir. August 2, 2000)(unpublished opinion) (citing *Jeffries v. Kansas*, 147 F. 3d 1220, 1233 (10th Cir. 1998)). Furthermore, "the fact that a plaintiff subjectively considers his or her workplace stressful and may have suffered personal health problems as a result is not an objective criterion used to determine if a reasonable employee would have been compelled to resign." *Exum*, 389 F. 3d at 1136, n. 7 (citing *Sanchez v. Denver Public Schools*, 164 F. 3d 527, 534 (10th Cir. 1998)).

Defendant acknowledges the foregoing authority, but asks the Court to apply the factors set forth in *Parker v. Board of Regents of Tulsa Junior College*, 981 F. 2d 1159 (10th Cir. 1992) to

determine if Dr. Vu's retirement was involuntary. Those factors are: 1) whether the employee was given some alternative to resignation; 2) whether the employee understood the nature of the choice he was given; 3) whether the employee was given a reasonable time in which to choose; and 4) whether he was permitted to select the effective date of resignation. *Parker*, 981 F. 2d at 1162.

In *Parker*, a college professor filed a 42 U. S. C. § 1983 civil rights claim, alleging she was constructively discharged and denied due process rights in connection with her discharge. *Id.*, at 1160-61. She had been given the opportunity to resign to avoid termination proceedings; she alleged she was coerced into resigning and did not do so voluntarily, and argued the circumstances constituted a constructive discharge because she resigned only to avoid termination. *Id.* Thus, the Circuit analyzed the circumstances to determine whether an opportunity to resign in lieu of termination could constitute a constructive discharge; to make that determination, it applied the above factors.

In this case, Dr. Vu was not faced with a choice between retirement or termination.[7] Although he was placed on a five-day suspension without pay and was denied requested medical leave, the record does not indicate Dr. Mickle or anyone else suggested he resign or retire. Dr. Vu acknowledges that the *Parker* factors have been applied in circumstances other than an alleged choice between termination and resignation. However, he asks the Court to apply the analysis in *Exum* and other Tenth Circuit decisions and to examine the facts to determine whether a reasonable person in Dr. Vu's position would have felt compelled to resign under the circumstances presented. More specifically, he characterizes the appropriate inquiry as whether a reasonable physician having PTSD would have believed he could reasonably continue to treat patients under the

---

[7]Although he contends Dr. Mickle threatened him with termination during their May 14 meeting, that contention is disputed because Dr. Mickle expressly denies making that threat.

11

circumstances involving Dr. Mickle and his alleged conduct. Dr. Vu argues that there is sufficient evidence in the record to create a factual dispute as to this question. The Court agrees that, in this case, the more appropriate analysis is whether a reasonable physician in Dr. Vu's position, given the totality of the circumstances, would have felt compelled to retire.

Having fully reviewed the record in light of the applicable law, the Court concludes that material factual disputes preclude summary judgment on Dr. Vu's constructive discharge claim. It is clear from the record that the parties dispute the facts regarding the cell phone incident which allegedly triggered a recurrence of PTSD. Furthermore, Dr. Vu's constructive discharge claim is also based on the contention that Dr. Mickle engaged in discriminatory conduct which created a hostile work environment, and the record reflects numerous disputed facts regarding the allegations underlying that contention. However, even accepting Dr. Vu's interpretation of Dr. Mickle's conduct, the question remains whether that conduct was sufficient to cause a reasonable physician in Dr. Vu's position to feel compelled to resign. As Defendant argues, the record establishes that Dr. Vu had the right to appeal the suspension imposed by Dr. Mickle and he did not do so. Dr. Vu, however, contends he did not appeal because Dr. Mickle indicated it would be futile to do so, and that contention is expressly disputed by Dr. Mickle. Thus, whether Dr. Vu's decision was reasonable is subject to disputed facts. The record also reflects some inconsistencies in testimony or documentation. To the extent credibility issues are raised by the record, they cannot be determined in a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000).

Although the evidence underlying Dr. Vu's constructive discharge claim may be limited, he has presented sufficient evidence to avoid summary judgment. Material fact disputes preclude the

adjudication of the constructive discharge claim at the summary judgment stage.

VI. Conclusion:

For the foregoing reasons, Defendant's motion for partial summary judgment [Doc. No. 39] is DENIED.

IT IS SO ORDERED this 9th day of August, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE